**John Grady GREEN and Karen O. Green, Plaintiffs,**

v.

**FARMERS HOME ADMINISTRATION; Dwight Calhoun, Administrator, Farmers Home Administration; Dan Mattox, Acting Mississippi State Director, Farmers Home Administration; Winfred Earl McAdams, Director Mississippi District 3, Farmers Home Administration, Defendants,**

**John Ed Carpenter, Intervenor/Defendant.**

**No. WC85–85–NB–D.**

United States District Court, N.D. Mississippi, W.D.

Sept. 17, 1986.

S. Allan Alexander, Oxford, Miss., for plaintiffs.

William M. Dye, Jr., Oxford, Miss., for defendants.

Guy Gillespie, Oxford, Miss., for intervenor/defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

The present cause comes before the court on the defendant FmHA's motion to dismiss or, in the alternative, for summary judgment and the intervenor/defendant John Ed Carpenter's motion for summary judgment. For purposes of judicial economy and because the arguments presented in support of both motions are essentially identical, the court will consolidate the motions for consideration in this opinion. Based on the pleadings, memoranda and exhibits attached thereto, the court finds, for the reasons detailed below, that the defendants' motions are well taken and should be granted.

Section 515 of the Housing Act of 1949, 42 U.S.C. § 1485, authorizes the Secretary of Agriculture to make loans to profit and non-profit organizations as well as individuals to aid in the construction of rental housing for families of low and moderate income residing in rural areas experiencing a shortage of adequate housing. Pursuant to section 515, the Farmers Home Administration (hereinafter referred to as "FmHA") promulgated regulations codified

at 7 C.F.R. § 1944, Subpart E, setting forth in detail the policies and procedures of the Rural Rental Housing (hereinafter referred to as "RRH") loan program.

The regulations direct the prospective construction loan recipient to begin the application process by filing a "pre-application for federal assistance" which is designed to enable FmHA to make a sequential determination of (1) the eligibility of the pre-applicant; (2) the feasibility of the proposed housing project; and (3) whether the proposed housing project can appropriately be financed by the FmHA. 7 C.F.R. § 1944.231. Exhibit A–6 of Subpart E clearly delineates the type of information the preapplicant should submit in order to satisfy the eligibility and feasibility requirements. Eligibility, for example, involves an assessment of the preapplicant's financial capacity, credit worthiness and managerial experience. Feasibility, on the other hand, focuses on the apparent need and demand for the proposed housing project within the community in which the project is to be located and its surrounding trade area. Thus, with regard to feasibility, FmHA requires that the preapplicant submit a market survey report indicating the number of eligible occupants in the area who are willing and financially able to occupy the housing at the proposed rental levels. Subpart E, Exhibit A–6(2). However, a determination of project feasibility is not strictly limited to the expressed demand for the project among eligible occupants in the area but is based also on numerous other factors which are to be included in the market survey report, such as:

(a) an estimate of number of houses or apartments in the area for rent ...;

(b) characteristics of available rental housing such as location, quality and size of unit, type of building, age of structure, house value, tenure, vacancy rate, nature of vacancies ...;

(c) characteristics of the persons eligible for occupancy of the proposed housing ...; and

(d) present living arrangements of eligible occupants in the area....

Where the FmHA District Director determines that a given preapplication is either ineligible or unfeasible, the Director is required to inform the preapplicant of the denial, the reason(s) therefor, and their appeal rights. 7 C.F.R. § 1944.231(2) & (3). Because of the limited nature of available funds, preapplications determined eligible and feasible are evaluated in accordance with the priority processing system established in 7 C.F.R. § 1944.231(3) which sets forth a point scoring system based on certain qualitative factors such as project location, subsidy eligibility and whether the project is designed to serve senior citizens. These preapplications are placed on the loan docket and the preapplicant is authorized to develop an application. 7 C.F.R. § 1944.231(b)(5)(i)(A).

On April 9, 1985, John Grady Green and Karen O. Green (hereinafter referred to as "the Greens") brought the instant action, citing the above regulations, against FmHA and Dwight Calhoun, Dan Mattox and Winfred Earl McAdams, in their capacity as FmHA officials, pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, seeking judicial review of the alleged wrongful rejection of the Greens' section 515 RRH loan preapplication. The Greens complain that FmHA arbitrarily and capriciously denied their preapplication as evidenced by FmHA's approval of Carpenter's "competing" and later filed preapplication.

The undisputed facts reveal that the Greens are the owners of a section 515 (RRH) project known as the Village Green, located just within the city limits of Grenada, Mississippi. In October, 1982, the Greens filed a preapplication for a RRH loan for construction of a 48–unit complex as an addition to the existing Village Green complex. In July, 1984, John Ed Carpenter (hereinafter referred to as "Carpenter") submitted a RRH loan preapplication to FmHA, proposing to build a 36–unit complex in Elliot, Mississippi, an unincorporated town located approximately eight miles

**1058**

from the Village Green project. The preapplication was approved in September, 1984. The following December, FmHA denied the Green preapplication on the basis that it was not feasible. In the letter of December 5, 1984 to John Grady Green informing him of the denial, the FmHA stated as reasons therefor:

> FmHA has existing projects in this town/area at the present time which are more than adequate to meet current needs. In fact, the vacancy rate in this area is too high in the existing FmHA financed projects.

The Greens contend that the finding of nonfeasibility is inconsistent with FmHA's approval of the Carpenter preapplication because both preapplications included a market survey report which identified Grenada County as the relevant market area. Thus, the Greens argue, a finding of feasibility as to the Carpenter preapplication should lead to the same finding as to the Green preapplication. It is further argued that if the Green preapplication is found to be eligible and feasible then it should be given priority over Carpenter's preapplication.

The scope of judicial review of agency action in the present context is a determination of whether such action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Final agency action is entitled to a presumption of regularity and will be set aside only where the court finds that there is no rational connection between the facts found and the choice made. *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The court's inquiry into the facts in the case *sub judice* is therefore limited to the question of whether FmHA engaged in "reasoned decision-making" in deciding to reject the Greens' preapplication on the basis of nonfeasibility. *United States v. Garner*, 767 F.2d 104, 116 (5th Cir.1985).

Upon review of the administrative record, supplemented by the testimony presented at the preliminary injunction hearing, the court finds that FmHA's determination that the Green preapplication was unfeasible was not arbitrary or capricious. Ample justification for FmHA's action can be found in the letter of December 5, 1984 wherein it was stated that the vacancy rate in the existing projects in Grenada was too high to permit the construction of additional units. Moreover, at the preliminary injunction hearing held in this cause on April 18, 1985, Mr. Winfred Earl McAdams, Director of District 3, Mississippi (FmHA), testified that the vacancy rate at the Greens' existing project, Village Green, was well above the rate allowable under FmHA guidelines and that the approval of an extension of that project would have violated FmHA regulations.

Furthermore, FmHA's determination that the Carpenter preapplication was feasible is not inconsistent with FmHA's finding as to the Green proposal. It is undisputed that the market survey reports submitted by the Greens and Carpenter identified the same geographical area as the relevant market area. Although this fact should lead one to expect that the market area demand for low and moderate income housing as reflected in each survey would be identical, it is not preclusive as to the finding of project feasibility. As noted above, a determination of project feasibility involves the assessment of a number of factors, many of which are not strictly concerned with prospective occupant *demand* per se, but rather the *need* for the proposed project within the community. In the case *sub judice* FmHA found that the Town of Elliot was a distinct rural community, with a rapidly developing economic structure. FmHA also recognized that Elliot did not have an existing RRH project and that the nearest such project was in Grenada approximately eight miles away. Because the Carpenter project was to be located in a distinct rural area experiencing continued economic expansion, FmHA made the implicit finding that the high

vacancy rate existing within the Grenada area, cited as the reason for the rejection of the Greens' proposal, was not determinative on the question of need for the Carpenter project. The court finds that these factors support FmHA's determination of feasibility as to the Carpenter project.

Because the court finds that FmHA's rejection of the Green's RRH preapplication was not arbitrary or capricious, there is no need to consider the issue of priority. It is therefore the opinion of the court that the defendants' motions for summary judgment should be granted.

Let an order issue accordingly.